IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


ELLEN O.,[1]

                 Plaintiff,

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

Case No. 1:19-cv-00433-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Ellen O. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying her applications for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401–433, and

Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f.

This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C.

§§ 405(g) and 1383(g)(3). For the reasons set forth below, the Commissioner's decision is

REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the initial of her last
name and does the same for other individuals whose identification could affect plaintiff's
privacy.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB on November 15, 2012, and SSI on November 20, 2012, both alleging a disability onset date of August 13, 2012.  Tr. 55–56, 74–75, 312.  Plaintiff's date last insured was December 31, 2016.  Tr. 55–56, 74–75.  The Commissioner denied plaintiff's applications for benefits initially and on reconsideration.  *Id.*  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on November 5, 2014.  Tr. 33–54.  The Appeals Council declined plaintiff's request for review, and plaintiff sought review with this court.  On September 21, 2017, this court remanded the matter for further proceedings, including additional consideration of plaintiff's allegation of a fibromyalgia impairment.  Tr. 382–90, 394.

On remand, ALJ Katherine Weatherly held a second hearing on November 13, 2018, where she received testimony from plaintiff and a vocational expert ("VE").  Tr. 333–57.  In a decision dated January 4, 2019, the ALJ again determined that plaintiff was not disabled within the meaning of the Act.  Tr. 312-22.  Plaintiff seeks judicial review by this court.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); see also *Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date, August 13, 2012. Tr. 314. At step two, the ALJ determined plaintiff suffered from the following severe impairments: history of lumbar compression fractures, degenerative disc disease and osteoarthritis of the lumbar and cervical spines, fibromyalgia, headaches, chronic pain disorder, and right hip bursitis. Tr. 315.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 315–16. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 404.1567(b), but was limited to lifting and carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking for six hours per eight-hour workday; sitting for six hours per eight-hour workday; occasional postural activities except

for frequently balancing, reaching, and handling and fingering; and that she must avoid concentrated exposure to extreme cold and heart, wetness, humidity, vibration, and hazards.  Tr. 316.

At step four, the ALJ found plaintiff was able to perform her past relevant work as an administrative clerk.  Tr. 321.  Accordingly, the ALJ concluded plaintiff was not disabled.  Tr. 322.

## DISCUSSION

Plaintiff contends the ALJ erroneously: (1) rejected her subjective symptom testimony, (2) rejected medical opinion evidence of record; (3) rejected the medical opinion of a "non-acceptable" medical source of record; (4) found her impairments did not "equal a listing" at step three; (5) crafted an incomplete RFC; and (6) found she could perform her past relevant work.

## I.     Subjective Symptom Testimony

### A.     Function Report

Plaintiff completed a function report on December 3, 2012.  Tr. 212–19.  She stated that she lived with a friend and was raising her four-year-old granddaughter.  Tr. 212.  Plaintiff explained that her neck and shoulders "hurt continually," her hands seemed weak, she had many headaches recently, her entire body hurts after lifting objects, she had hip and back pain, and that some days were better than others.  *Id*.

Plaintiff engaged in the following daily activities: making beds, preparing breakfast, doing dishes, feeding her dog, brushing her teeth, icing her neck and back, preparing dinners, and completing "the daily chores that need to be done."  Tr. 213.  She also fed, clothed, and bathed her granddaughter, combed her granddaughter's hair, and transported her granddaughter to and from daycare.  Tr. 213–14.

4 – OPINION AND ORDER

Although plaintiff prepared meals daily, it took more time than in the past.  Tr. 214.  And while she cleaned her home and did laundry, that also took more time than before.  Tr. 215.  Sometimes plaintiff "mow[ed]," but she "suffer[ed] afterwards."  *Id.*  In general, she did not want to do house or yard work because her body suffered that night and usually for the next day or two.  *Id.*

Plaintiff reported difficulty sleeping because she hurt all over and it was hard to get comfortable.  Tr. 213.  She usually went two to three days on limited sleep and then took something to help her sleep.  *Id.*  Sometimes her arms, hands, and legs ached so badly, she wanted to cry.  *Id.*  Her condition required her to sit down to put on socks and pants.  Tr. 214.

Plaintiff usually went outside daily, and shopped for groceries twice weekly.  Tr. 215.  She continued to have hobbies, including watching television, camping, swimming, and gardening.  Tr. 216.  She reported social activities, including speaking to her parents over the phone, emailing, occasional trips to the movies with a friend, and occasional babysitting of an infant.  Tr. 216-17.  She described herself as "a very social person."  Tr. 217.

Plaintiff indicated she usually finished what she began, and was "good" at following written and spoken instructions and getting along with authority figures.  *Id.*  In her concluding remarks, plaintiff asserted that she found it difficult to ask for help because she previously was a very independent person.  Tr. 219.  She also described herself as a "type A" personality who did more activity than she should.  *Id.*

### B.    Hearing Testimony

At the November 13, 2018 hearing, plaintiff described some of her job history, including work as a child monitor and administrative assistant at a funeral home.  Tr. 339–43.  She testified that she had been raising her granddaughter since 2009.  Tr. 336.  Plaintiff also traveled to Grants

Pass twice a week to provide care and transportation for her mother. Tr. 337–38. Plaintiff's mother paid her for this work, which took approximately eight hours per week. *Id.* Pain symptoms, however, made it "harder and harder" for plaintiff to help her mother. Tr. 337.

Plaintiff took Cymbalta daily, but did not take other medication unless she "absolutely" had to and only at night. Tr. 344. She had access to lorazepam, Flexeril, and Tylenol PM. *Id.* Plaintiff's irritable bowel syndrome was manageable with a non-prescription medication she obtained from Costco. Tr. 347.

Plaintiff described that her fibromyalgia symptoms, including aches and pains, were worsening, and she was constantly fatigued. Tr. 345. When she was employed, she never missed work due to her pain, although "[s]ometimes it was hard to focus." *Id.*

When plaintiff was able to get a good night's sleep, her fibromyalgia symptoms were not as bad. Tr. 346. Plaintiff also was prone to headaches or migraines when she did not get proper sleep and because of stress. Tr. 347–48.

Plaintiff's back problems, including a history of surgery, made it difficult to sit or stand for long periods of time. Tr. 346–47. To manage her pain, plaintiff used ibuprofen, heating, and icing. Tr. 350. Soaking in warm baths also helped her back pain. Tr. 347.

Plaintiff felt depressed because of her constant pain. Tr. 349. However, she was not receiving any mental health counseling. Tr. 344.

### C.    Relevant Law

A two-step process is employed for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce

the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  When doing so, "the claimant need not

show that her impairment could reasonably be expected to cause the severity of the symptom she

has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by

offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at

1036 (quoting *Smolen*, 80 F.3d at 1281).  A general assertion that the claimant is not credible is

insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests

the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The

reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the

ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750

(9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by

substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v.*

*Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR")

96-7p, governing the assessment of a claimant's "credibility," and replaced it with

SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminated the

reference to "credibility," clarified that "subjective symptom evaluation is not an examination of

an individual's character," and required the ALJ to consider all of the evidence in an individual's

record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2. The ALJ must

examine "the entire case record, including the objective medical evidence; an individual's

statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. Because plaintiff's second hearing took place after SSR 16-3p was enacted, it applies to this case. *See* Tr. 316.

###### D.   Analysis

The ALJ provided two reasons for rejecting plaintiff's subjective symptom testimony: because (1) it was inconsistent with her level of functioning in daily activities, and (2) it was inconsistent with the objective medical findings of record.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 318. However, the ALJ ultimately concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.*

Generally, an ALJ may discount a claimant's symptom testimony if it is inconsistent with the claimant's activities, or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ recounted plaintiff's daily activities, which included raising her granddaughter, failing to stop working until she was laid off despite her impairments, and assisting her aging

mother. Tr. 318. The ALJ further noted that plaintiff's alleged onset date was not "related to any evidence of trauma/injury or documented worsening of conditions." *Id.*

Plaintiff asserts that none of the reasons provided by the ALJ rise to the applicable clear-and-convincing legal standard. Plaintiff likens the ALJ's treatment of her ability to care for herself and her granddaughter to that examined in *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017), where the Ninth Circuit found error because the ALJ's decision lacked specificity. Pl.'s Br. 31. In *Trevizo*, the court determined "[t]here is almost no information in the record about Trevizo's childcare activities; the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations." 871 F.3d at 682. Indeed, the ALJ in this case similarly discounted plaintiff's allegations without providing any specifics about how plaintiff's professed ability to provide some childcare was inconsistent with her allegations. As plaintiff explained to the ALJ at her hearing, she is able to carry out some minimal activities in her home, including preparing simple meals and clothing and bathing herself and her granddaughter, but with breaks to sit down, soak, and apply heat and ice to painful body areas. The ALJ failed to specify what portions of plaintiff's testimony were not reliable and did not explain how plaintiff's testimony was inconsistent with her ability to care for her granddaughter. As such, the ALJ's rationale was not clear-and-convincing.

While the ALJ also discredited plaintiff's subjective symptom testimony because it was inconsistent with the objective evidence of record, that ground alone is not sufficient for this court to affirm the ALJ's determination regarding her testimony. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (when a claimant produces evidence of an underlying impairment, the Commissioner may not reject subjective symptom reports simply because they are not supported by objective evidence). Here, for example, the ALJ found plaintiff's testimony unreliable

because her onset date did not coincide with any traumatic incident or injury of record.  Tr. 318.

But that rationale amounts to little more than a purported inconsistency with the objective record.

Plaintiff did not testify that she was disabled due to any one incident; to the contrary, she

testified that her combined impairments were worsening over time.  *See* Tr. 202.  As such, the

ALJ's rationale falls short of the exacting clear-and-convincing standard.

Finally, although the ALJ noted that plaintiff continued to work despite her impairments

until she was laid off, the record reflects that plaintiff did not allege disability until nearly 16

months after she last worked in April 2011.  Tr. 33.

For these reasons, this case is remanded for an ALJ to reassess plaintiff's subjective

symptom reports.

## II.    Medical Opinion Evidence

### A.    Relevant Law

The ALJ is responsible for resolving conflicts in the medical record, including conflicting

physicians' opinions.  *Carmickle*, 533 F.3d at 1164.  The law distinguishes between the opinions

of three types of physicians: treating physicians, examining physicians, and non-examining

physicians.  *See* 20 C.F.R. § 404.1527.[2]   The opinions of treating physicians are generally

accorded greater weight than the opinions of non-treating physicians.  20 C.F.R.

§ 404.1527(c)(2); *Lester*, 81 F.3d at 830.  A treating physician's opinion that is not contradicted

by the opinion of another physician can be rejected only for "clear and convincing" reasons.

*Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  If, however, a treating physician's

opinion is contradicted by the opinion of another physician, the ALJ must provide "specific,

---

[2] The Commissioner has issued revised regulations changing this standard for claims filed after
March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Plaintiff's claim was filed before March 27, 2017,
and therefore is controlled by 20 C.F.R. § 404.1527.

legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Tommasetti*, 533 F.3d at 1040.

### B.    Dr. Hahn

Suzanna Hahn, M.D., performed a consultative examination of plaintiff on August 14, 2013. Dr. Hahn noted plaintiff's reports that her conditions were worsening, and that she was having low back pain following a past surgery in that area. Tr. 280. The doctor additionally noted plaintiff's complaints of fatigue, headaches, iritis, and sleep disturbance due to pain. *Id.* After summarizing the examination results, Dr. Hahn diagnosed fibromyalgia, "back pain with probable bilateral sciatica," and neck pain. Tr. 283–84. Dr. Hahn concluded plaintiff was capable of walking and standing up to four hours per day and sitting up to six hours.[3] Tr. 284. She also limited plaintiff to light-level lifting and carrying, and assessed several postural and manipulative limitations. *Id.* The ALJ purported to accord Dr. Hahn's opinion "great weight." Tr. 319. However, the ALJ's RFC formulation limited plaintiff to six hours of standing and walking, as opposed to the four hours opined by the doctor. Tr. 316.

Plaintiff asserts that the ALJ's failure to accurately incorporate Dr. Hahn's four-hour standing and walking limitation was reversible error, because such a restriction would prevent her from performing her past relevant work as an administrative clerk. Pl.'s Br. 17. However, when the ALJ posed the relevant hypothetical question to the VE at the hearing, the ALJ

[3] Dr. Hahn's assessment regarding standing and walking for four hours was echoed by a reviewing physician, Dr. Westfall. Tr. 82.

properly invoked the four-hour standing and walking limitation. Tr. 353. Moreover, the VE explained that "as [plaintiff] performed it," i.e., her past relevant work," the hypothetical limitation "would be the norm for that kind of work." Tr. 354. As such, any error in failing to properly adopt Dr. Hahn's standing and walking limitation was harmless.

C.    Dr. Heidinger

One of plaintiff's treating physicians, W. Heidinger, M.D., completed a functional capacity assessment on June 19, 2015. Tr. 469–70. The doctor opined that plaintiff could lift and carry less than 10 pounds occasionally and could not lift or carry any weight frequently. Tr. 469. The doctor further opined that plaintiff could stand or walk less than two hours per workday, and sit for less than six hours, as long as she had the ability to periodically alternate sitting, standing, and lying down. *Id.* Dr. Heidinger also opined that plaintiff had manipulative limitations, and limitations regarding environmental conditions in the workplace. Tr. 470. The ALJ accorded "little weight" to Dr. Heidinger's opinion, noting that it was unclear when plaintiff established care with the doctor, and that the doctor's opinions appeared to be based on plaintiff's subjective symptom reports, which the ALJ found were unsupported by contemporaneous medical findings. Tr. 320.

Indeed, although Dr. Heidinger's opinion is from 2015, plaintiff did not provide any chart notes or medical findings by Dr. Heidinger before 2017. Because the ALJ was not required to accept a treating physician's opinion that was inadequately supported by clinical findings, the ALJ did not err in identifying that rationale as a reason to accord Dr. Heidinger's medical opinion little weight. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d at 1219, 1228 (9th Cir. 2009).

However, for the period for which Dr. Heidinger's chart notes are included in the record, the medical findings are generally consistent with plaintiff's subjective complaints, which the ALJ erroneously dismissed absent clear-and-convincing reasons to do so. Moreover, in the context of fibromyalgia, there are commonly few, if any, objective findings that corroborate the severity of pain or other symptoms that may limit a plaintiff's residual functional capacities. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). As such, the ALJ erred in determining that the doctor's apparent acceptance of plaintiff's subjective complaints was erroneous for the period beginning in September 2017. *See, e.g.*, Tr. 586-88, 590-92, 593-95, 601-03.

In fact, Dr. Heidinger was concerned enough by the severity of plaintiff's symptoms to refer her to a neurological specialist, who confirmed Dr. Heidinger's opinion that plaintiff suffered from bursitis and had a history of lumbar compression fractures, as well as osteoporosis. Tr. 486. Based on the record as a whole, therefore, the ALJ erred by failing to provide specific-and-legitimate reasons for rejecting Dr. Heidinger's opinion as it applied to the period beginning in the latter part of 2017, to the extent contemporaneous medical imaging by the neurological specialist, and Dr. Heidinger's chart notes, largely corroborated her subjective symptoms. Further, it is clear that the ALJ's legally erroneous conclusion that plaintiff's subjective symptoms were not supported by the overall medical evidence tainted her evaluation of Dr. Heidinger's 2015 opinion. Considering plaintiff's overall medical picture in the context of fibromyalgia, the ALJ on remand should properly determine whether Dr. Heidinger's 2015 opinion was consistent with the doctor's later chart notes, plaintiff's subjective symptom reports, and other medical evidence of record.

### D.   FNP Joslin

Plaintiff contends the ALJ failed to accord adequate weight to Family Nurse Practitioner (FNP) Stephen Joslin, despite the ALJ's assertion that she considered Joslin plaintiff's "primary treating source." Tr. 320. In a January 21, 2013 medical opinion, Joslin noted plaintiff's history of laminectomy for a ruptured disc, low back pain, migraine headaches, and depression and anxiety, among other issues. Tr. 265. Joslin "felt [plaintiff] has fibromyalgia," which was later corroborated by other medical sources, and indeed the ALJ reached that conclusion herself. *Id.* Joslin concluded that plaintiff could not work in a "competitive work force." *Id.* The ALJ failed to discuss Joslin's 2013 medical opinion.

Joslin provided a second medical opinion on June 7, 2014. Tr. 288-90. Therein, Joslin indicated he had treated plaintiff two-to-three times per year for five years, and diagnosed myositis (muscle inflammation), myalgia, lumbago, ulnar nerve entrapment, and migraines. Tr. 288. Joslin opined that plaintiff could stand or walk less than two hours per workday, and sit for three hours. Tr. 289. He further opined plaintiff could occasionally lift ten pounds and rarely lift twenty pounds. *Id.* Joslin opined that plaintiff's ability to focus and concentrate at work would "frequently" be interrupted by pain and other symptoms, although she would be capable of "low stress jobs." Tr. 290. However, Joslin also opined that plaintiff would be expected to miss more than four days of work per month due to her impairments. *Id.*

The ALJ assigned little weight to Joslin's 2014 opinion because "it [wa]s internally inconsistent and it [wa]s not supported by objective medical evidence." Tr. 320. The ALJ's assessment, however, failed to explain how Joslin's 2014 opinion was internally inconsistent. As such, the ALJ's rationale for rejecting the opinion cannot be said to be either specific-and-legitimate or germane. Further, for the same reasons discussed above, the absence of objective

medical findings in the context of fibromyalgia is not a valid reason to discredit Joslin's opinion.

Moreover, it does not appear that the ALJ considered Joslin's earlier 2013 opinion for

consistency with his later opinion, or the evidentiary record as a whole. Finally, for reasons

already discussed, to the extent the ALJ rejected Joslin's 2014 opinion because it was based on

plaintiff's erroneously rejected symptom complaints, the rationale was invalid. Accordingly,

remand is necessary.

### III.    Step Three Finding

Plaintiff argues the ALJ erred in failing to find that her impairments equaled Listing

14.09D for inflammatory arthritis.[4]  *See* 20 C.F.R. Pt. 404, Subpart P, App. 1, § 14.09(6)(d)

("Listing 14.09D").  As noted above, at step three, the ALJ is tasked with determining if one or

more of a claimant's severe impairments "meets or equals" one of the presumptively disabling

impairments listed in the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"[F]or a claimant to qualify for benefits by showing that [her] unlisted impairment, or

combination of impairments, is medically equivalent to a listed impairment, [s]he must present

medical findings equal in severity to *all* the criteria for the one most similar listed impairment."

---

[4] Listing 14.09D, requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the
> constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary
> weight loss) and one of the following at the marked level: (1) limitations of
> activities of daily living[;] (2) Limitation in maintaining social functioning[;]
> [and] (3) limitation in completing tasks in a timely manner due to deficiencies in
> concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpart. P, App. 1 § 14.09D.  "Severe fatigue means a frequent sense of
exhaustion that results in significantly reduced physical activity or mental function.  Malaise
means frequent feelings of illness, bodily discomfort, or lack of well-being that result in
significantly reduced physical activity or mental function."  *Id.* at § 14.00(C)(2).

*Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

The ALJ determined plaintiff's impairments did not meet or equal Listing 1.02 for major dysfunction of a joint or Listing 1.04 for disorders of the spine. Tr. 316; *see* 20 C.F.R. Pt. 404, Subpart P, App. 1, §§ 1.02, 1.04. Regarding plaintiff's fibromyalgia, the ALJ determined "the clinical findings do not medically equal the criteria of any category of impairments in Appendix 1 [i.e., the Listing of Impairments], nor do the clinical findings medically equal a listing in combination with at least one other medically determinable impairment." *Id.* The ALJ concluded that "the record does not document inflammation or major peripheral joints causing difficulties with ambulation or fine and gross movements."[5] *Id.* Based on this last sentence, it appears that the ALJ's finding was directed at Listing 14.09A, which involves inflammation in the joints. *See* 20 C.F.R. Pt. 404, Subpart. P, App. 1, § 14.09A.[6] In any case, the ALJ found plaintiff was not presumptively disabled at step three.

---

[5] The ALJ noted that "the District Court indicated the claimant's fibromyalgia meets the listing criteria of 14.09D[.]" Tr. 316. However, this court did not make such a finding. *See* Findings and Recommendation 3, Tr. 384 (noting that "Plaintiff *argues* that the ALJ erred by . . . neglecting to find that her fibromyalgia equals Listing 14.09D[.]") (emphasis added). Regardless, plaintiff does not assert that she *meets* Listing 14.09D, but rather that her combination of impairments *equals* that listing. Pl.'s Br. 13.

[6] Listing 14.09A provides:

> The spectrum of inflammatory arthritis includes a vast array of disorders that differ in cause, course, and outcome. Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation.

Defendant argues that because "[p]laintiff did not propose any theory of medical equivalence to the ALJ or explain to the ALJ what evidence equaled what Listing requirement, she forfeited the issue." Def.'s Br. 4–5. Otherwise stated, "at no point during the administrative proceedings did Plaintiff attempt to establish medical equivalence of her fibromyalgia to any particular impairment." *Id.* at 5.

In support, defendant cites a Ninth Circuit case, *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017), for the proposition that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." Def.'s Br. 4 (quoting *Shaibi*, 883 F.3d at 1109). While the court in *Shaibi* considered the claimant's failure to inquire as to the reliability of job numbers in the national economy, defendant contends that the reasoning is equally applicable to whether plaintiff raised the issue that her impairments equaled Listing 14.09D. Indeed, since *Shaibi* was decided, the Ninth Circuit issued an unpublished opinion in which it held that, "[b]ecause [the claimant] was represented by counsel during the administrative proceedings, she waived any contention that the ALJ failed to consider Listing 12.05(C), Intellectual Disability, by failing to raise the issue before either the ALJ or the Appeals Council." *Harris v. Berryhill*, 738 F. App'x 529, 531 (9th Cir. 2018) (cited pursuant to Ninth Circuit Rule 36-3) (citing *Shaibi*, 883 F.3d at 1109). Defendant also cites *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), in which the Ninth Circuit held that an ALJ is not required to compare a claimant's impairments to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. Def.'s Br. 4-5; *see also Kennedy*, 738 F.3d at 1178 ("The ALJ appropriately

---

20 C.F.R. Pt. 404, Subpart P, App. 1, § 14.09A.

addressed the issues that Kennedy raised and determined that Kennedy did not meet or equal any listing.").

Although plaintiff concedes that she made no explicit argument regarding equivalence to the ALJ, she argues that the issue was nevertheless before the ALJ. Pl.'s Reply 3 (citing 20 C.F.R. § 404.946(a) ("The issues before the [ALJ] include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in your favor.")). Plaintiff maintains that "[b]ecause the issue of whether [her] impairments equaled Listing 14.09D . . . was not decided entirely in her favor before the state agency, to the extent the ALJ did not find her impairments were equivalent to Listing 14.09D, *by regulation*, this issue automatically became an issue before the ALJ." *Id.* (emphasis in original).

However, it is clear from the record that the equivalence to Listing 14.09D was not in issue *at all* during plaintiff's administrative proceedings. The medical examiners at the initial and reconsideration stages considered whether plaintiff's impairments met or equaled *other* listings, but at no time indicated that they considered Listing 14.09D. *See* Tr. 61, 69, 81, 92. Although plaintiff raised the issue before the district court in her first appeal, it does not appear that the issue has been before the Social Security Administration at any time. In fact, at the second hearing, plaintiff's attorney argued that plaintiff was eligible for disability benefits because her RFC prevented her from doing her previous work, not that she should be presumed disabled under the listings. Tr. 335.

Moreover, taken to its logical conclusion, plaintiff's argument stands for the proposition that for virtually every impairment or combination thereof, the ALJ would be required to eliminate all similar listings, regardless of whether the claimant argued any equivalency theory. Such a requirement would certainly burden the disability claims process to the extreme, and is

inconsistent with the majority of relevant Ninth Circuit case law.  By failing to raise the issue

before the ALJ, plaintiff has waived it.

   In any event, plaintiff has failed to provide a viable theory, supported by substantial

evidence, to establish equivalency under Listing 14.09D.  Listing 14.09D requires that a claimant

has "at least two of the constitutional symptoms or signs": severe fatigue, fever, malaise, or

involuntary weight loss.  20 C.F.R. Pt. 404, Subpart. P, App. 1 §§ 14.00C(2), 14.09D.  Plaintiff

asserts that she presented with severe fatigue and malaise.  Pl.'s Br. 15.  Independent review of

the record reveals mixed results.  *See, e.g.*, Tr. 462 (no active medical problems, rates general

health as good); 471 (denies constitutional symptoms); 474 (denies constitutional symptoms);

477 (denies constitutional symptoms); 478 (positive for fatigue but negative for fever or appetite

change); 483 (pain generally better with medication); 484, 618 (positive for fatigue but negative

for fever or appetite change); 492, 628 (reassured by treatment provider that symptoms can be

managed nonoperatively); 496 (migraine headache improving, no atypical symptoms, no recent

illnesses or fevers); *cf.* Tr. 587 (profound fatigue impairs daily function), 591 (profound fatigue

impairs daily function), 606 (fatigue, weight gain); 615 (positive for fatigue but negative for

fever or unexpected weight change), 631 (complains bitterly of pain, fibromyalgia has been

stable to worse), 632 (weight gain, profound fatigue).  As such, it is unclear whether plaintiff's

signs, overall, reflect "severe fatigue" and "malaise" as defined by the regulations.

   Listing 14.09D also requires that plaintiff demonstrate "marked" limitation in either

activities of daily living, maintaining social functioning, or completing tasks in a timely manner

due to deficiencies in concentration, persistence, or pace.  20 C.F.R. Pt. 404, Subpart P, App. 1, §

14.09D.  Plaintiff asserts that she demonstrates marked limitation in both activities of daily living

and limitations in concentration, persistence or pace.  Pl.'s Br. 15.  However, because plaintiff

did not make such arguments before the ALJ, those issues are also forfeited.

## IV.    Remand for Further Proceedings

When a court determines the Commissioner erred in some respect in making a decision to

deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or

without remanding the cause for a rehearing."  *Treichler v. Commissioner*, 775 F.3d 1000, 1099

(9th Cir. 2014) (quoting 42 U.S.C. § 405(g)).  In determining whether to remand for further

proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true"

standard when the following requisites are met: (1) the ALJ has failed to provide legally

sufficient reasons for rejecting evidence, (2) the record has been fully developed and further

proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were

credited as true, the ALJ would be required to find the plaintiff disabled on remand.  *Garrison*,

759 F.3d at 1020 (citations omitted).  Even if all of the requisites are met, however, the court

may still remand for further proceedings, "when the record as a whole creates serious doubt as to

whether the claimant is, in fact, disabled[.]"  *Id.* at 1021.

For the reasons described herein, the ALJ erred in evaluating the reliability of plaintiff's

symptom testimony as well as the medical opinions of two of her treating physicians.  However,

because the objective medical record is somewhat mixed, and because the medical opinion

evidence of record does not unambiguously provide a determinative outcome even if credited as

true, the appropriate remedy in this case is remand for further proceedings to complete the record

and re-weigh the evidence.  Specifically, on remand, the ALJ shall re-evaluate the medical

opinions of Dr. Heidinger and FNP Joslin, with full consideration of plaintiff's verified

fibromyalgia condition and with regard to the consistency of the record as a whole.  The ALJ

also shall re-evaluate plaintiff's subjective symptom allegations and, if appropriate, provide clear-and-convincing reasons to reject any relevant testimony.  Finally, because this matter will once again be before an ALJ, plaintiff will have the opportunity to present a theory on how her combination of impairments meets or equals any of the listings, if she chooses to do so.  In sum, this case shall be remanded on an open record, and the ALJ on remand shall undertake the entirety of the sequential evaluation process anew.  *See Dominguez v. Colvin*, 808 F.3d 403, 408 (9th Cir. 2017) (holding that court "may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act").

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED April 21, 2020.

/s/ Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge